SO ORDERED.

Dated: November 12, 2025

Daniel P. Collins, Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re United Hauling, LLC, | ) | Chapter 11 Proceedings (Subchapter V) |
| | ) | |
| Debtor. | ) | Case No: 2:25-bk-03680-DPC |
| | ) | |
| | ) | **UNDER ADVISEMENT ORDER RE SUBCHAPTER V PLAN MODIFICATION OF A FULLY MATURED LOAN.**[1] |
| | ) | |
| | ) | (Not for Publication – electronic Docketing ONLY) |

Before this Court is the Motion for Relief from the Automatic Stay ("Motion for Relief") filed by Iron Rings Holdings, LLC ("Iron Rings") and IG Holdings, Inc. ("IG Holdings") (collectively "Lenders").[2] A preliminary hearing on the Motion for Relief was held on September 4, 2025. The Court requested additional briefing from United Hauling, LLC ("United Hauling" or "Debtor") and the Lenders on the applicability of the Ninth Circuit's *New Investments* decision.[3] The Court now issues its Under Advisement Order rejecting the applicability of *New Investments* when a Subchapter V debtor proposes to modify an oversecured creditor's loan under § 1123(a)(5)(E) where that loan matured pre-petition. The Court also holds that a Subchapter V reorganization plan may modify a loan that fully matured prepetition, provided that the plan meets the

---
[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014 and Fed. R. Civ. P. 52.
[2] Docket Entry ("DE") 82.
[3] 840 F.3d 1137 (9th Cir. 2016). See DE 122.

confirmation requirements of § 1129. Finally, the Court holds that, in some circumstances, the default interest rate and accrued late fees charged on an oversecured creditor's claim may be reduced.

I.    **BACKGROUND**

On March 6, 2024, Joseph Smith and Leah DeLozier-Smith ("the Smiths"), owners and principals of the Debtor, executed a promissory note ("Note") on behalf of the Debtor for a loan ("Loan") secured by a second position deed of trust (the "Deed of Trust") recorded against real property located at 5443 E. Skinner Dr., Cave Creek, AZ 85331 (the "Property").[4] The Note was payable to Iron Rings and Igstar, LLC ("Igstar").[5] Just before executing the Note, the Smiths transferred title on the Property to United Hauling.[6] The Loan was then made to United Hauling for the principal amount of $400,000.[7] The Note terms called for monthly interest-only payments of $8,666.67 at a 26% annual interest rate with a balloon payment due on March 6, 2025.[8] The Note provided that, in the event of default, there would be a 31% increase in the interest rate for any payment received 30 days past due,[9] and a daily late fee of $100 for any payment more than 10 days overdue.[10] United Hauling defaulted on the Loan in August 2024, and has been in default since that date.[11]

On January 28, 2025, the Debtor filed a voluntary chapter 11 petition which was dismissed on February 25, 2025, for failure to file the schedules and statements.[12] The

---

[4] DE 82 at 2.
[5] Igstar apparently transferred its interests in the Note to IG Holdings on August 5, 2025. See DEs 108, n.1 and 146-1.
[6] DE 129 at 3.
[7] Claim 9-2 at 5.
[8] *Id*.
[9] The default rate, therefore, is 57% per annum.
[10] *Id*.
[11] DE 82 at 2.
[12] 2:25-bk-00718-EPB at DE 22. This case is hereafter referred to as the "First Bankruptcy."

1  Debtor states this dismissal was due to ineffective assistance of prior counsel.[13] On
2  April 22, 2025, after the Loan matured on March 6, 2025, the Debtor attempted to
3  reinstate the First Bankruptcy.[14] Debtor withdrew its motion to reinstate the First
4  Bankruptcy[15] and then filed the instant bankruptcy petition on April, 25, 2025.[16]

5  The Debtor lists the value of the Property at $1,400,000 on its schedules but
6  indicates that the Debtor holds "bare legal title only."[17] The Debtor's Schedule D
7  indicates that the Property was subject to two liens: the Lender's second lien and a first
8  lien amounting to $462,749.74.[18] On July 3, 2025, the Lenders filed their Proof of Claim
9  for $594,193.66[19] which includes the unpaid principal, accrued interest at an annual
10 interest rate of 31%, late fees, and other charges.[20] Lenders filed an Amended Claim on
11 October 21, 2025 for $566,826.99 which amount included charges at an annual default
12 interest rate of 57%.[21] The parties agree that the Lenders are oversecured, at least as of
13 October 21, 2025.[22]

14 On July 24, 2025, the Debtor filed its Plan of Reorganization ("Plan") which
15 recognizes the Lenders hold a secured claim against the Property in the amount of
16 $495,000. That claim was to be amortized over 40 years at an interest rate of 8% with a
17 balloon payment due in year 10.[23]

---

[13] DE 129 at 3.
[14] First Bankruptcy at DE 47.
[15] DE 1.
[16] First Bankruptcy at DE 52; DE 1.
[17] DE 1 at 13.
[18] *Id*. at 17-18.
[19] Recall that it was not until August 5, 2025, that Igstar transferred its interest in the Note to IG Holdings. See n.5, above.
[20] Claim 9-1 at 2. The Debtor objected to this claim on September 30, 2025, at DE 129. On November 6, 2025, the Court heard arguments on that Claim Objection.
[21] Claim 9-2 at 2.
[22] DE 128 at 5; DE 108 at 4. Lenders' Amended Proof of Claim indicates the value of its collateral, the Property, is $1,230,000. Although the parties agree that the Lenders are oversecured, part of the Claim Objection seeks to cram down the amount of the accrued default interest and late fees.
[23] DE 69 at 4.

On August 8, 2025, Lenders filed the Motion for Relief claiming the Plan does not propose to resume payments in the amounts called for under the Note, does not promptly cure the defaults under the Loan, and that the Lenders' interests are not adequately protected in view of the $1,230,000 valuation of the Property obtained by the Lenders.[24] In the Debtor's Response to the Motion for Relief, the Debtor asserts there is substantial equity in the Property, adequate protection payments are being made, the Property is essential for reorganization, and the default interest rate and daily penalties are not be legally enforceable.[25] The Lenders' Reply argues that relief is warranted because the Plan extends the Loan and slashes the interest rate, making the Plan "patently unconfirmable."[26] A preliminary hearing on the Motion for Relief was held on September 4, 2025. The Court requested additional briefing from both parties regarding confirmability of the Debtor's Plan in light of the *New Investments* case.[27]

The Debtor argues that *New Investments* applies only to an effort by a debtor to cure a pre-petition default which differs from the loan modifications the Debtor's Plan proposes.[28] Debtor relies on the distinction between "modification" and "cure" set forth by the Ninth Circuit BAP in *Curiel*[29] and asserts that the modification of a loan that matured prepetition is permissible subject to the Debtor demonstrating feasibility and fair treatment under its plan.[30] Lenders focus on the language of § 506(b) which allows an oversecured creditor to receive post-petition interest and fees in accordance with the underlying contract. Lenders argue *Entz-White*[31] was effectively overruled when § 1123(d) was enacted. Lenders also argued *New Investments* demonstrates that default

---

[24] DE 82.
[25] DE 100 at 2.
[26] DE 108 at 2.
[27] DE 100 at 2.
[28] DE 123 at 1.
[29] 651 B.R. 548 (B.A.P. 9th Cir. 2023).
[30] DE 123 at 4-5.
[31] 850 F.2d 1338 (9th Cir. 1988).

interest must be paid to Lender under Debtor's Plan.[32] Lender states, "Debtor's Plan does not seek to cure the default at all and in fact, the [N]ote is fully matured so there is no way to 'cure' the default at this point."[33]

On September 30, 2025, Debtor filed an Amended Plan of Reorganization ("Amended Plan") which, among other things, reflects the need for the determination of the secured claim by the Court, pays no less than $4,000 a month to the Lenders, and provides for a balloon payment seven years after the original maturity date.[34] The Amended Plan also added the following language: "[u]pon Confirmation of the Plan, all defaults shall be deemed cured, and Lender shall have no right to enforce any acceleration, penalty interest, or default-related remedy under the original loan documents."[35]

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

## III. ISSUES

1. Whether *New Investments* is applicable under the facts of this case.

2. Whether a Subchapter V Chapter 11 debtor's plan of reorganization may extend the maturity date, cram down the contract's interest rate and remove late fees called for in a loan obligation held by an oversecured creditor.

---

[32] DE 124.
[33] DE 124 at 6.
[34] DE 128 at 5.
[35] *Id*.

## IV. THE LAW

### A. Treatment of Matured Liens Under a Chapter 11, Subchapter V Plan of Reorganization.

Chapter 11 of the Bankruptcy Code provides that a plan of reorganization must "provide adequate means for the plan's implementation," including the "satisfaction or modification of any lien" or the "curing or waiving of any default."[36] Although the terms "cure" and "modification" are not defined in the Bankruptcy Code, "the two concepts are distinct."[37] Courts have explained the difference between "cure" and "modification" as follows:

> A modification of a loan is a fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note. By contrast, a "cure" merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default. A cure will remedy or rectify the default and restore matters to the status quo ante. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions.[38]

Prior to the 1994 amendments to the Bankruptcy Code, debtors in the Ninth Circuit whose plans of reorganization proposed to cure a default could avoid certain consequences of default, including paying the higher post-default interest rate called for under the parties' contract terms.[39] In 1994, Congress amended the Bankruptcy Code by adding § 1123(d) which provides that "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."[40] Thereafter, the Ninth Circuit noted in the *New Investments* case that when a debtor's plan proposed to cure a pre-confirmation default, the debtor must follow

---

[36] 11 U.S.C. §§ 1123(a)(5)(E), (a)(5)(G).
[37] *In re Curiel*, 651 B.R. at 559.
[38] *Id.* (quoting *In re Jacobs*, 644 B.R. 883, 900 (Bankr. D. N.M. 2022).
[39] *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988).
[40] 11 U.S.C. § 1123(d).

§ 1123(d).[41]

Debtors whose plans propose to modify liens are subject to the anti-modification exception in § 1123(b)(5) when a claim is "secured only by a security interest in real property that is the debtor's principal residence."[42] Section 1123(b)(5) applies to real estate mortgages on principal residences only when the chapter 11 debtor is an individual.[43] Subchapter V chapter 11 debtors are permitted to modify the rights of a creditor secured only by the individual debtor's principal residence if the new value received from granting the security interest (1) was not primarily used to acquire the real property and (2) used primarily in connection with the small business of the debtor.[44]

The Bankruptcy Code does not prohibit modification of the rights of lienholders on loans that fully matured prior to the bankruptcy filing.[45] Courts in the Ninth Circuit have confirmed chapter 11 reorganization plans where the debtors proposed to modify the loans that matured pre-petition by extending the amortization period, providing a later balloon payment, and adjusting the interest rate.[46] Such plans did not "cure" a loan default but, rather, permissibly modified the pre-petition matured obligations.[47]

**B. Modification of Interest and Fees of an Oversecured Creditor.**

As a general proposition, in bankruptcy, interest that has not accrued as of the petition date is not part of a creditor's allowed claim.[48] However, § 506(b) expressly provides that an oversecured creditor is entitled to post-petition interest and "any

---

[41] *In re New Invs., Inc*, 840 F.3d at 1140-41.
[42] 11 U.S.C. § 1123(b)(5).
[43] 7 Collier on Bankruptcy P 1123.02 (16th 2025).
[44] 11 U.S.C. § 1190(3); *see generally* Hon. Paul W. Bonapfel, *A Guide to the Small Business Reorganization Act of 2019*, at 85-88 (Rev. June 2022) ("SBRA Guide"), https://www.alsb.uscourts.gov/sbra-materials (click on "SBRA guide (Judge Paul Bonapfel, 338 pp.) (updated June 2022)") (last visited October 24, 2025) (explaining differences in modification rights under § 1123(b)(5) and § 1190(3)).
[45] *In re Curiel*, 651 B.R. at 560.
[46] *Id.*; *see In re Beltway One Dev. Grp., LLC*, 547 B.R. 819, 823 (B.A.P. 9th Cir. 2016).
[47] 11 U.S.C. § 1129(b)(2)(A)(i); (b)(2)(B)(i).
[48] 11 U.S.C. § 502(b)(1).

reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose," up to the value of the collateral.[49] Courts have held there is a presumption allowing a claim's contract rate of interest, including default rates, provided that the rate is not unenforceable under applicable non-bankruptcy law or such presumption is not rebutted on equitable grounds.[50] Contractual late fees are analyzed to determine if it is an unenforceable penalty under state law or otherwise inequitable or unreasonable.[51] The burden is on the debtor to demonstrate the default rate is inequitable or unreasonably compensates the creditor for its losses arising from the default and that late fees are unenforceable penalties or inequitable or unreasonable.[52]

V. ANALYSIS

    A. Does *New Investments* Controls the Permissible Treatment of a Loan that Matured Prepetition?

The Court first turns to the question of whether the Ninth Circuit decision in *New Investments* controls this matter under the facts presented. In *Entz-White*, the Ninth Circuit held that a debtor who cures a default under a plan may nullify all consequences of default.[53] *New Investments* explicitly overruled *Entz-White* because, when the Bankruptcy Code was amended to add § 1123(d), a chapter 11 plan could no longer nullify a preexisting obligation in a loan agreement to pay post-default interest solely by

---

[49] 11 U.S.C. § 506(b).
[50] *See Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n, LLC* (*In re Epicenter Partners, L.L.C.*), 789 F. App'x 632, 634 (9th Cir. 2020) (presumption of allowability for contract default rate, which is rebuttable by debtor or trustee); *see General Elec. Capital Corp. v. Future Media Prods., Inc.*, 530 F.3d 1178 (9th Cir. 2008); *see also In re Terry Ltd. P'ship*, 27 F.3d 241 (7th Cir. 1994) ("presumption in favor of the contract rate subject to rebuttal based upon equitable considerations"), cert. denied, 513 U.S. 948 (1994); *see also In re Laymon*, 958 F.2d 72, 73–75 (5th Cir. 1992), cert. denied, 506 U.S. 917 (1992) ("[W]hether the 18% contractual default rate. . .should apply must be decided by examining the equities involved in this bankruptcy proceeding.").
[51] *See Epicenter Partners, LLC v. Sonoran Desert Land Invs., LLC*, No. 2:16-BK-05493-MCW, 2018 WL 2239561 (D. Ariz. May 16, 2018).
[52] *In re Beltway One Dev. Grp., LLC*, 547 B.R. at 830; *Epicenter Partners, LLC v. Sonoran Desert Land Invs., LLC*, No. 2:16-BK-05493-MCW, 2018 WL 2239561 (D. Ariz. May 16, 2018).
[53] *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d at 1342.

proposing a cure.[54] In *New Investments* the debtor proposed a reorganization plan which would cure a loan default by selling the property and using the proceeds to pay the secured creditor's claim at the pre-default interest rate.[55] While *Entz-White* arguably permitted such treatment, in *New Investments* the Ninth Circuit held that § 1123(d) no longer permits such plan treatment.

In the case at bar, United Hauling is not proposing to pay Lenders under the original Loan terms.[56] Unlike the plan in *New Investments* which sought to cure the loan by paying the creditor from the proceeds of the sale of the creditor's collateral at the contract interest rate applicable pre-default, here, Debtor's proposed Amended Plan provides for treatment different than either the contract rate or default rate.[57] The Debtor is not proposing to return to the Loan terms that existed prior to default. Debtor is not proposing to cure the Loan under the Amended Plan. Debtor is proposing to modify Lender's secured claim under the Amended Plan.

In *Beltway One*, debtor's plan included language that the creditor would "not be entitled to any default interest, late fees, or other charges resulting from a default occurring prior to the Effective Date" and that any previous defaults would be deemed cured as of the effective date.[58] The creditor opposed confirmation because the creditor was deprived of its contractual default interest under § 506(b).[59] During the plan confirmation hearing in *Beltway One*, the debtor acknowledged that the plan was not curing the loan, or restoring it to its formerly effective terms, but rather restructuring the debt as a modified loan.[60] Although *Beltway One* was decided a few months prior to *New*

---

[54] *In re New Invs., Inc*, 840 F.3d at 1140-41.
[55] *Id.* at 1139.
[56] DE 82 at 2.
[57] *In re New Invs.*, Inc, 840 F.3d at 1140-41; DE 82 at 2.
[58] *In re Beltway One Dev. Grp., LLC*, 547 B.R. at 823.
[59] *Id.*
[60] *Id.*

*Investments*, the Ninth Circuit BAP also recognized that *Entz-White* was inapplicable where there was no proposed cure.[61]

Here, Debtor's Amended Plan was filed after the parties filed their "*New Investments*" briefs, but the Debtor's new plan language which mentions a "cure" of the Debtor's pre-petition default does not change the result. Debtor is not seeking to restore the former terms of the Note under the Amended Plan. Debtor is not truly proposing to cure it's defaults. Because the Debtor is instead seeking to modify or restructure the terms of the Loan under § 1123(a)(5)(E) rather than cure or restore the original terms under § 1123(a)(5)(G), *New Investments* does not apply to the facts of this case.

**B. May Debtor's Chapter 11 Plan Extend the Loan's Maturity Date, Decrease the Interest Rate, and/or Eliminate Late Fees of the Loan Which Matured Pre-Petition?**

The Court now turns to the question of whether the Debtor's Amended Plan may modify the Loan's maturity date, interest rate, and other default provisions where that Loan matured pre-petition. The Debtor's Amended Plan seeks to modify the rights of the Lenders, which are secured only by an interest in real property, under § 1123(a)(5)(E). Debtor is an LLC and cannot have a principal residence so the principal residence exception in § 1123(b)(5) does not apply. Although the Debtor's principals, the Smiths, reside at the property, the plain language of the statute refers to the principal residence of the debtor itself not a debtor's principals or owners.

Even if the principal residence anti-modification exception applied, the Debtor likely satisfies both prongs of the Subchapter V residential property exception. The first prong requires that the new value given by the Lender be primarily used to acquire the Property. Here, the Smiths owned the Property long before the Loan but transferred the

---

[61] *Id.* at 827.

Property title to United Hauling, apparently for no consideration. The second prong requires that Lender's Loan be primarily used in connection with the borrower's small business. This prong is likely satisfied because the parties both report this as a business loan.[62]

Lender contends Debtor cannot modify the terms of the oversecured Loan which fully matured pre-petition. In *Curiel*, the debtor's confirmed plan provided payments amortized over 30 years, with a balloon payment payable at five years, and an interest rate of 8.5% on a fully matured secured debt.[63] Over the secured creditor's objection, the Ninth Circuit BAP held that the Bankruptcy Code does not contemplate a restriction on the modification of loans that mature prepetition.[64] In *Beltway One*, the bankruptcy court confirmed a plan that modified a fully matured loan by extending the loan term by six years and cramming down the interest rate to 4.25%.[65]

The Debtor's Amended Plan seeks to modify the Loan, just as the debtors proposed to modify the matured secured loans in *Curiel* and *Beltway One*. The Loan is to be extended under the Amended Plan with a balloon payment seven years after the loan matured. This is consistent with the allowed year 5 and year 6 balloon payments in *Curiel* and *Beltway One*.[66] Here, the Debtor's Amended Plan proposes an unidentified interest rate but does propose to extend the maturity date (balloon date) to no later than March 6, 2032.[67] The confirmed plans in *Curiel* and *Beltway One* both adjusted the secured creditors' interest rates.[68] This Court has long made it known that it will follow

---

[62] See DE 128, page 1, and DE 146, page 3.
[63] *In re Curiel*, 651 B.R. at 559.
[64] *Id.* at 560.
[65] However, the focus of that appeal was on the permissible pendency interest rate, namely, the interest rate accruing between petition date and the plan confirmation date. *In re Beltway One Dev. Grp., LLC*, 547 B.R. at 823.
[66] *Id.*; *In re Curiel*, 651 B.R. at 556.
[67] The Debtor may be waiting for the determination of the claim and secured status before supplying this rate or perhaps the Debtor does not intend to modify the 26% contract rate. This seems improbable.
[68] However, the interest modification in Curiel increased the 5% contractual interest rate to a plan interest rate of 8.5%. *In re Curiel*, 651 B.R. at 553-54.

the Ninth Circuit BAP and the decisions of the District Court for the District of Arizona and it plans to continue to do so in this case.[69]

Under Debtor's Amended Plan, the Lenders will be treated as an impaired class because the Amended Plan seeks to modify the rights of the Lenders. Although § 506(b) governs the interest accruing post-petition and prior to confirmation (the "pendency rate"), pursuant to § 1129(b) a different interest rate may be applicable as of the effective date of a plan. Like the plan in *Curiel* which was remanded for further proceedings related to the feasibility, the Debtor in our case will need to present persuasive evidence that there is sufficient cash flow to fund the Amended Plan.

In summary, under its reorganization plan it is permissible for the Debtor to seek an extension of the maturity date of the Loan and a post-effective date adjustment of the interest rate but the Amended Plan remains subject to the confirmation standards of § 1129.

**C. May a Chapter 11 Subchapter V Debtor Cram Down the Pre-Petition Accrued Interest and/or the Pendency Interest Rate and the Late Fees Charged By an Oversecured Creditor?**

The parties do not dispute that the Lenders are oversecured creditors, but a dispute remains on the interest the Lender is entitled to under § 506(b).[70] Determining that it is permissible for a reorganization plan to modify a loan that matured prepetition, the Court must now determine whether a debtor can decrease the pre-petition interest or late charges and/or accruing post-petition default interest (i.e. pendency interest) and late fees in the claim of an oversecured creditor.

In *Future Media Productions*, the Ninth Circuit adopted a rule applied in the Fifth

---

[69] *In re Sample*, No. 2:10-38373-DPC, 2013 WL 3759795 (Bankr. D. Ariz. July 15, 2013).
[70] The Debtor asserts that the contractual interest rate and late fees are unenforceable penalties.

and Seventh Circuits to the effect that there is a presumption of allowability of the contracted default interest rate, "provided that the rate is not unenforceable under applicable nonbankruptcy law."[71] The Ninth Circuit rejected the creation of a bright line rule that a 2% default rate was allowable.[72] The Fifth and Seventh Circuits have noted that this contracted rate presumption may be rebutted by the equities of a bankruptcy proceeding. The Ninth Circuit BAP has adopted this equitable analysis when considering whether the contract enforcement presumption is rebuttable.[73]

In *Epicenter Partners*, the Ninth Circuit affirmed a creditor's claims with post-petition interest at the contractual rate because the debtor failed to show that the 35% contract rate was an unenforceable penalty under Arizona law.[74] Additionally, the debtor failed to rebut the contract rate presumption based on equitable considerations because, among other things, neither the bankruptcy court nor the debtors identified associated harm to third parties.[75] Some of the equitable factors identified for consideration by a bankruptcy court include a spread between default and non-default interest rates, the reasonableness or justification of the different rates, double recovery of late fees for default, whether the interest rate constitutes a penalty, whether the secured creditor is guilty of misconduct, harm to unsecured creditors, and the impairment of the debtor's fresh start.[76]

Daily late fees were addressed by the U.S. Court for the District of Arizona in *Epicenter Partners, LLC v. Sonoran Desert Land Investors, LLC*. That court addressed

---

[71] *Gen. Elec. Cap. Corp. v. Future Media Prods., Inc.*, 547 F.3d at 961.
[72] *Id.* at 962.
[73] *In re Terry Ltd. P'ship*, 27 F.3d at 243; *In re Laymon*, 958 F.2d at 75; *Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n, LLC* (*In re Epicenter Partners, L.L.C.*), 789 F. App'x at 634; *In re Beltway One Dev. Grp., LLC*, 547 B.R. at 823.
[74] *Epicenter Partners, L.L.C. v. CPF Vaseo Ass'n, LLC* (*In re Epicenter Partners, L.L.C.*), 789 F. App'x at 634. The *Epicenter* decision is memorandum decision and, therefore, non-precedential.
[75] *Id.*
[76] *See In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140, 145 (B.A.P. 9th Cir. 1996), abrogated by *Gen. Elec. Cap. Corp. v. Future Media Prods., Inc.*, 547 F.3d 956 (9th Cir. 2008) (citing equity factors); *In re Terry Ltd. P'ship*, 27 F.3d at 244; *In re 1111 Myrtle Avenue Group, LLC*, 598 B.R. 729 (Bankr. S.D. N.Y. 2019); *In re Bate Land & Timber LLC*, 541 B.R. 601 (E.D.N.C. 2015).

an appeal by a creditor after the bankruptcy court denied the inclusion of per diem late fees in the proof of claim.[77] The secured creditor's $26.5 million loan accrued $10,000 of late fees per day. That creditor's $3.7 million loan accrued $1,500 in late fees per day.[78] The debtor objected to the inclusion of the late fees in the claim as "unreasonable and unenforceable penalties under Arizona law."[79] The District Court established that "the amount of liquidated damages set forth in a contract is reasonable to the extent that the amount approximates the actual loss caused by the breach and the loss anticipated at the time of contract formation, even if the fixed amount does not approximate the actual loss of the non-breaching party."[80]

These cases all address modification of an oversecured creditor's loan through confirmation of a chapter 11 plan but do not limit their holdings to only post-confirmation interest or late fees. This Court finds that, while the contract terms of the Loan are presumed to apply post-petition, if non-bankruptcy law or the equities of this case compel denial of late fees, default interest or excessive contract interest, the Court may so hold for either or both the pendency period or the post-confirmation period but not for any time period pre-petition (unless applicable non-bankruptcy law so provides).

An evidentiary hearing is to be held in this case on November 25, 2025. In advance of that trial, the parties must know this Court is hereby finding that precedent in this circuit and district permits the Court to reduce both pendency and post-confirmation contract interest, default interest, and late fees charged by an oversecured creditor if the Debtor successfully rebuts the presumption that its contract rates prevail. The Debtor must demonstrate such charges are not enforceable under applicable non-bankruptcy law

---

[77] *See Epicenter Partners, LLC v. Sonoran Desert Land Invs., LLC*, No. 2:16-BK-05493-MCW, 2018 WL 2239561 (D. Ariz. May 16, 2018).
[78] *Id.*
[79] *Id.*
[80] *Id.*(citing *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 393 P.3d 449, 453 (2017)); *Epicenter Partners, LLC v. Sonoran Desert Land Invs., LLC*, No. 2:16-BK-05493-MCW, 2018 WL 2239561 (D. Ariz. May 16, 2018). Because the late fees did not reasonably estimate the actual losses suffered by the creditor, the District Court affirmed that the late fees qualified as unenforceable penalties under Arizona law.

or by demonstrating to this Court that the equities of this bankruptcy proceeding weigh against adopting the presumed enforcement of these contracted provisions. Again, this Court finds the Debtor may not modify the pre-petition claims of the Lenders unless applicable non-bankruptcy law requires such modification.

## VI. CONCLUSION

The Court finds that, the Debtor's Amended Plan does not propose to "cure" the Loan under § 1123(a)(5)(G). The holding of *New Investments* do not apply to the facts of this case. The Court further finds an extension of the Loan's maturity date, adjustment of the interest rate and removal of late fees on the Loan is permissible within a Chapter 11 Subchapter V plan of reorganization even though, pre-petition, the Loan matured. Such plan modification may apply to post-petition and/or post-confirmation interest and fees but not to pre-petition claims of the Lenders, unless applicable non-bankruptcy law so provides. To do so, however, the Debtor will need to satisfy the standards set forth in § 1129(a) and in the case law referenced above.

**ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties